IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JOHN GREGG,**<br><br>      Plaintiff,<br>vs.<br><br>**CENTRAL TRANSPORT, LLC**,<br><br>      Defendant. | Case No.: 1:24-cv-01925<br><br>Hon. Elaine E. Bucklo<br><br>Magistrate Judge Hon. Gabriel A. Fuentes |

**PLAINTIFF'S MOTION TO RECONSIDER, ALTER OR AMEND A JUDGMENT UNDER RULE 59(e) AND FOR RELIEF FROM A JUDGMENT OR ORDER UNDER RULE 60(b)**

Plaintiff, John Gregg ("Plaintiff"), by and through his undersigned counsel, respectfully files this Motion to Reconsider, Alter or Amend a Judgment Under Rule 59(e) and for Relief From Judgment or Order Under 60(b)(1) & (6) of the Federal Rules of Civil Procedure.

**I.    INTRODUCTION**

After this Court's dismissal of this action the Honorable United States District Judge Georgia N. Alexakis denied a similar motion to dismiss in *Schwartz v. Supply Network, Inc.*, No. 1:23-cv-14319, 2024 U.S. Dist. LEXIS 213002 (N.D. Ill. Nov. 22, 2024) ("*Schwartz*"),[1] attached hereto as Exhibit A. *Schwartz*—relying on controlling authorities and expressly disagreeing with this Court's decision—holds that Public Act 103-0769 (the "Amendment") is not a mere clarification or procedural amendment, but rather is a substantive change to the Biometric Information Privacy Act ("BIPA") that has no retroactive effect. *Schwartz*'s approach is correct and, as this brief shows, well-supported. The order or judgment of dismissal should be set aside,

---

[1] The *Schwartz* opinion is particularly relevant to this Court's review because it was argued and decided on the same general briefing as this case. The law firms that represent the Plaintiff and Defendant here represent the parties in *Schwartz* and litigated the same issues in that Court.

1

this action should be reinstated on the docket, and Defendant's motion to dismiss should be denied.

**II.     STANDARD**

Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after entry of the judgment." Fed. R. Civ. P. 59(e). "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Emerson v. Dart*, 109 F.4th 936, 943 (7th Cir. 2024). "Manifest error is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Alarm Det. Sys. v. Vill. of Schaumburg*, 2024 U.S. Dist. LEXIS 196712, at *3 (N.D. Ill. Oct. 30, 2024) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). "Rule 59 is not 'a vehicle for rearguing previously rejected motions.'" *Id.* at *3-4 (quoting *Oto*, *supra*). "Relief under Rule 59(e) is an 'extraordinary remed[y] reserved for the exceptional case.'" *Id.* at *4 (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (alteration in original)). "A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon." *Kraybill v. Adkins*, 2024 U.S. Dist. LEXIS 177204, at *16 (citing Fed. R. App. P. 4(a)(4)(A)(iv)).

Rule 60(b) provides: "On motion and just terms, the court may relief a party . . . from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1) & (6). It "allows a district court to correct its own errors." *Cruz v. Griebel*, 2023 U.S. App. LEXIS 13223, at *3 (7th Cir. May 30, 2023) (unpublished) (citing *Kemp v. United States*, 142 S. Ct. 1856, 1865 (2022); *Mendez v. Republic Bank*, 725 F.3d 651, 659 (7th Cir. 2013)). Seeking to reinstate a complaint improperly dismissed in a final order or judgment is a proper use of the motion. *See, e.g., Pension Trust Fund Op. Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941-42 (7th Cir. 2018). "Relief under [Rule 60(b)] is an 'extraordinary remedy' and should be granted only in 'exceptional circumstances.'"

*Banks v. Chi. Bd. of Educ.*, 750 F.3d 663, 668 (7th Cir. 2014) (quoting *Bakery Mach. & Fabr., Inc. v. Trad'l Bnk'ng, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009)). "A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment." *Kraybill* (citing Fed. R. App. P. 4(a)(4)(A)(vi)).

**III.    ARGUMENT**

This Court's Memorandum Opinion and Order ("*Gregg*", Dkt. # 53) and *Schwartz* agree on the overarching legal framework. Each cite to *K. Miller Const. v. McGinnis,* 238 Ill. 2d 284, 938 N.E. 2d 471 (2010) as the authoritative law for whether the Amendment is clarifying, retroactive, or only prospective. *See Gregg* at 4-5; *Schwartz* at *5-6. Both agree that for a court to determine under *McGinnis* that an amendment is a clarification, the standard is "whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history." *Gregg* at 5 (quoting *McGinnis*, 938 N.E. 2d at 481) (quoting *Middleton v. City of Chicago*, 578 F.3d 655, 663-64 (7th Cir. 2009)); *Schwartz* at *5-6. And both conclude that the first part is not met here—both find that the Illinois legislature did not declare that it was clarifying a prior enactment. *Gregg* at 5; *Schwartz* at *5.

At this point the opinions diverge. *Gregg* and *Schwartz* disagree on whether the second and third factors compel a finding that the Amendment is a clarification of, or a change to, existing law. *Gregg* finds that the second factor is met, concluding that "the question of BIPA damages was at least ambiguous" under the Illinois Supreme Court's decision in *Cothron v. White Castle Sys.*, 2023 IL 128004, 216 N.E. 3d 918 (Ill. 2023). *Gregg* at 5-6. *Schwartz* finds that the second factor is not met because *Cothron* left no ambiguity that damages could potentially be awarded for each separate BIPA violation. *Schwartz* at *6. *Gregg* determines that the third factor is met, finding

3

that "by inviting the legislature to 'clarify' the issue of damages, the Illinois Supreme Court endorsed the view that the issue was unsettled and that the legislature could permanently settle it." *Gregg* at 7-8. *Schwartz* concludes that ". . . *Cothron*'s tail-end suggestion 'that the legislature review . . . policy concerns [regarding potentially excessive damages] and make clear its intent regarding assessment of damages under the Act,' . . . does not cabin the legislature's future action or by itself overcome the presumption that the law has been changed rather than clarified." *Schwartz* at *6-7 (quoting *Cothron* at ¶ 43) (alteration in original).

**A. Factor Two: A Conflict or Ambiguity Did Not Exist Prior to the Amendment**

In declining to follow *Gregg*'s opinion on the second factor, *Schwartz* reasons that:

> while ambiguity in a statute prior to an amendment can indicate clarification rather than change, *see McGinnis*, 238 Ill. 2d at 299 (citing *Middleton*, 578 F.3d at 663), the relevant inquiry concerns ambiguity in the statutory text itself, *see Middleton*, 578 F3d at 664 ("As we explained in the first portion of our opinion . . . text of the two statutes was not ambiguous, leaving nothing for Congress to 'clarify.'"). And the Illinois Supreme Court found the statutory language here clear. *E.g.*, *Cothron*, 2023 IL 128004, at ¶¶ 30, 40.

*Schwartz* at *7-8. *Schwartz* concludes that "while 'conflict' can indicate intent to clarify a statute, there is no conflict to resolve in *Cothron*: the question in *Cothron* was certified from the Seventh Circuit, and *Cothron* reached the 'same conclusion' about per-scan violations as an earlier appellate court." *Schwartz* at *6 (citing *Cothron* at ¶¶ 1, 24) (quoting *Watson*, 2021 IL App (1st) 210279, 196 N.E. 3d 571, ¶ 46 (App. Ct. Ill. (1st Dist.) (2021) ("Our appellate court has reached the same conclusion, determining that 'the plain language of [section 15(b)] establishes that it applies to each and every capture and use of plaintiff's fingerprint or hand scan. Almost every substantive section of the Act supports this finding.'")). *Schwartz* also finds there was no ambiguity "regarding the clarity of the Act's original text." *Schwartz* at *6 (citing *McGinnis* at 299; *Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011) ("The highest court of each State, of course, remains the final arbiter of what is state law.'" (cleaned up). "Simply put, *Cothron* saw no

4

ambiguity in the text of the Act itself." *Id*.

*Cothron* squarely holds that BIPA's text unambiguously provides in plain language that each violation constitutes a separately actionable claim. *See Cothron* at ¶ 45 ("In sum, we conclude that the plain language of section 15(b) and 15(d) shows that a claim accrues under the Act with every scan or transmission of biometric identifiers or biometric information without prior informed consent."); ¶¶ 20, 32 ("Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. Only if the statutory language is ambiguous may we look to other sources to ascertain the legislature's intent. . . . We are not persuaded by . . . nontextual arguments in support of [] single-accrual interpretation."); *see also id*. at ¶¶ 23, 28-30.

*Gregg* finds that this is not dispositive because "[i]n *Cothron*, the court held that a BIPA claim *accrues* with each scan or transmission of biometric identifiers or information, but did not hold that plaintiffs are entitled to liquidated damages for every one of those violations." *Gregg* at 6 (emphasis in original) (citing *Rowe v. Papa John's Int'l, Inc.*, No. 23-cv-2082, 2024 WL 3925411, at *15 (N.D. Ill. Aug. 23, 2024)). *Gregg* cites that *Rowe* "observ[ed] that *Cothron* identified the possibility of large damage awards under the BIPA, but did not make a damages holding and ultimately deferred to the legislature on the issue[.])." *Id*.

But this finding and citation are incorrect. First, the *Rowe* decision supports rather than undercuts Plaintiff's position. There, the District Court (The Honorable District Judge Steven C. Seeger) largely denied a BIPA defendant's motion to dismiss on other grounds, observing that the Amendment was newly enacted and had already been signed into law, noting that no courts had examined whether it was retroactive yet and that the parties before it had not "teed it up either." *Rowe* at *40-41. It then remarked that "if need be, this Court can decide this question down the road." *Id*. *Rowe* simply observed that if an unconstitutionally high damages award is rendered, that

5

could be a potential consideration for reducing the amount of the verdict. *Id.*; *see also, e.g., Ewing v. 1645 Farragut LLC*, 90 F.4th 876, 891 (7th Cir. 2024) (sitting in diversity applying Illinois law of remittitur); *see also Cothron* at ¶ 42.

Second, there was no ambiguity in the BIPA Section 20 damages remedy's interplay with Section 15's multiple claim accrual that could be clarified by an amendment. *Cothron*'s holding includes that the plain language of BIPA's damages remedy provision coupled with the plain language that each violation constitutes a separately actionable claim unambiguously provides that such damages can be cumulatively awarded for each separate claim-violation:

> White Castle and amici . . . caution this court against construing section 15(b) and section 15(d) to mean that a claim accrues for each scan or transmission of biometric information made in violation of those provisions. They assert that, because *section 20 of the Act sets forth liquidated damages that a party may recover for "each violation," allowing multiple or repeated accruals of claims by one individual could <u>potentially</u> result in punitive and "astronomical" damage awards* that would constitute "annihilative liability" not contemplated by the legislature and possibly be unconstitutional. . . . White Castle estimates . . . class-wide damages in her action may exceed $17 billion. We have found, however, that *the statutory language clearly supports plaintiff's position*. As the district court observed, *this court has repeatedly held that, where statutory language is clear, it must be given effect,* "'even though the consequences may be harsh, unjust, absurd or unwise.'" (Emphasis omitted.) *Cothron*, 477 F. Supp. 3d at 734 (quoting *Petersen v. Wallach*, 198 Ill. 2d 439, 447, 764 N.E.2d 19, 261 Ill. Dec. 728 (2002)).
>
> *This court has repeatedly recognized the <u>potential</u> for significant damages awards under the Act. Rosenbach*, 2019 IL 123186, I 36-37, 129 N.E.3d 1197, 432 Ill. Dec. 654; *McDonald* [*v. Symphony Bronzeville Park, LLC*], 2022 IL 126511, ¶ 48, 193 N.E.3d 1253, 456 Ill. Dec. 845 [(2022).]

*Cothron* at ¶¶ 40, 41 (emphasis and underlining added).

*Cothron* not only rules that there is no textual ambiguity, it further dispels any claim of ambiguity as to whether the legislature intended that liquidated damages would potentially be available for each BIPA violation: "While we explained in *Rosenbach* that 'subjecting private entities who fail to follow the statute's requirements to *substantial <u>potential</u> liability, including liquidated damages* . . . 'for each violation' of the law' is one of the principal means that the

*Illinois legislature adopted to achieve the Act's objectives of protecting biometric information*, there is no language in the Act suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business." *Id*. at ¶ 42 (emphasis and underlining added) (quoting *Rosenbach*, 2019 IL 123186, ¶ 36, 129 N.E.3d 1197 (Ill. 2019) (quoting 740 ILCS 14/20 (West 2016)). It did so in the context of "agree[ing] with our appellate court's recognition that 'a trial court presiding over a class action—a creature of equity—would certainly possess the *discretion* to fashion a damage award that (1) fairly compensated class members and (2) included an amount designed to deter future violations, without destroying defendant's business." *Id*. (quoting *Cent. Mut. Ins. Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339, 19 N.E. 3d 1100, ¶ 72 (Ill. App. Ct. (1st) 2014) (emphasis added). And while noting that "[i]t also appears that the General Assembly chose to make damages *discretionary* rather than mandatory under the Act." *Id*. (emphasis added) (citing 740 ILCS 14/20 (West 2018) ("detailing the amounts and types of damages that a prevailing party *may* recovery") (emphasis added by the Court); *Watson*, 2021 IL App (1st) 210279, at ¶ 66 n.4). *Cothron* "explain[s] that the legislature intended to subject private entities who fail to follow the statute's requirements to substantial *potential* liability . . . to give private entities the strongest possible incentive to conform to the law and prevent problems before they occur." *Id*. at ¶ 41 (internal quotation marks omitted; emphasis added). The Illinois Supreme Court "do[es] not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *Solon v. Midwest Med Records Ass'n*, 236 Ill. 2d 433, 441, 925 N.E. 2d 1113 (Ill. 2010).

*Rosenbach,* which *Cothron* cites with approval, also is a binding authority on this point. In *Rosenbach*, the Illinois Supreme Court ruled, *inter alia*, that:

> The strategy adopted by the General Assembly . . . impos[es] safeguards to insure that individuals' and customers' privacy rights in their biometric identifiers and

> biometric information are properly honored and protected to begin with, before they are or can be compromised . . . *by subjecting private entities who fail to follow the statute's requirements to substantial <u>potential</u> liability, including liquidated damages*, injunctions, attorney fees, and litigation expenses *'for each violation'* of the law (*id*. § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown.

*Id*. at ¶ 36 (emphasis and underlining added). The Seventh Circuit agrees with this point as well: "As the Seventh Circuit noted, private entities would have 'little incentive to course correct and comply if subsequent violations carry no legal consequences." *Cothron* at ¶ 41 (quoting *Cothron v. White Castle Sys.*, 20 F.4th 1156, 1165 (7th Cir. 2021)).

All a plaintiff "must do to meet the amount-in-controversy requirement of 28 U.S.C. § 1332(a) is, '*on the date of filing* . . . allege in good faith that over $75,000 was at stake.'" *Schwartz* at *14 (quoting *Sykes v. Cook, Inc.*, 72 F.4th 195, 206 (7th Cir. 2023) (emphasis added by the Court)); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (holding the amount-in-controversy requirement is satisfied unless it "appear[s] to a legal certainty" a plaintiff cannot recover more than $75,000 on its complaint). Plaintiff did that here. The holdings of *Cothron* and *Rosenbach* include that a BIPA plaintiff who asserts more than 15 reckless or intentional violations or more than 75 negligent violations can "potentially" recover in excess of $75,000—and *potentially* is all that is required under *St. Paul Mercury*.

Plaintiff's Complaint asserts that Defendant violated BIPA with respect to him "no less than four times each working day" "[f]rom October 1, 2023, to October 31, 2023[.]" Complaint, Dkt. # 1 at ¶ 16. Conservatively running these figures through a business days calculator (https://www.gigacalculator.com/calculators/working-days-calculator.php) to exclude weekends and holidays, this equates to approximately 84 BIPA violations—more than enough for Plaintiff to have established and maintain diversity jurisdiction in this Court under the above controlling precedents. Consequently, more than $75,000 is *in controversy* under Plaintiff's pleading.

**B. Factor Three: The Amendment is Not Consistent With a Reasonable Interpretation of the Prior Enactment and its Legislative History**

Nor does the Amendment abrogate *Cothron*'s and *Rosenbach*'s holdings by a legislative "clarification." Again, both *Gregg* and *Schwartz* agree that there is no text in the Amendment declaring that it was clarifying the prior enactment of BIPA. *Gregg* at 5; *Schwartz* at *5, *10-11. *Schwartz* correctly rules that the absence of such language, standing alone, compels a court to rule consistent with the Illinois Statute on Statutes, 5 ILCS 70/4,[2] and under binding Illinois case law, that an amendment that does not expressly indicate that it is a clarification is not one:

> In the text of the amendment to the Act, the Illinois legislature has not expressly indicated its intent regarding the amended statute's temporal reach. *See* 740 ILCS 14/20, *as amended by* SB 2979, Public Act 103-0769. That is, even though, 'the legislature is undoubtedly aware of how to clearly indicate its intent that a statute apply to causes of action currently pending in the courts, *Perry* [*v. Dep't of Prof'l Reg.*, 2018 IL 122349, ¶ 66 (Ill. 2018)], it has not done so here.

*Schwartz* at *10-11.

*Perry* holds that under current Illinois law, once a reviewing court has concluded that the legislature that passed the amendment at issue "has not expressly prescribed its intent as to the temporal reach" the court cannot hold that the amendment is clarifying—the court, rather, must move on to "discern the legislature's intent by examining whether [the amendment is] procedural or [a] substantive *change[] in law*." *Perry* at ¶ 68 (emphasis in original). "Section 4 of the Illinois Statute on Statutes provides a default answer to the legislative-intent question: amendments that

---

[2] Section 4 of the Illinois Statute on Statutes provides:

> No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. . . . This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act.

are procedural in nature may be applied retroactively, while those that are substantive may not." *Schwartz* at ¶¶ 10-11 (citing 5 ILCS 70/4; *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, 28 N.E. 3d 758, ¶¶ 31-32 (Ill. 2015)). "Owing to this default answer, 'the [Illinois] legislature has clearly indicated the temporal reach of *every* amended statute . . . .'" *Schwartz* at *10 (citing *Caveney v. Bower*, 207 Ill. 2d 82, 94, 797 N.E. 2d 596 (Ill. 2003) (ruling that "In light of section 4 . . . with respect to a statutory amendment or repeal, it is virtually inconceivable that an Illinois court will ever go beyond . . . ascertain[ing] whether the legislature has clearly indicated the temporal reach of the amended statute")). Standing alone, this means that the Amendment cannot be construed by a court to be a clarification of BIPA.

*Gregg* relies on *Cothron* for having "deferred to the legislature, 'respectfully suggest[ing] that the legislature review these policy concerns and make clear its intent regarding the assessment of damages under the [BIPA]'", *Gregg* at 3 (quoting *Cothron* at ¶ 43) (alterations in original). But the Illinois Supreme Court frequently notes in its rulings that when, as occurred in *Cothron*, they are based on the plain language of Illinois statutes, any policy-based concerns are beyond the Court's purview and should be addressed by the legislature. *See, e.g., People v. Kastman*, 2022 IL 127681, 211 N.E. 3d 459, ¶ 83 (Ill. 2022) ("The Director also posits several policy arguments to support his assertion that our construction of the Act is inconsistent with the legislature's intent. Having rejected that assertion based on the plain language, we need not address each of these arguments. Policy-based concerns as to apportionment of necessary treatment costs and living expenses under the Act are matters best addressed by the legislature."); *Folta v. Ferro Eng'g*, 2015 IL 118070, 43 N.E. 3d 108, ¶ 43 (Ill. 2015) ("We are cognizant of the harsh result in this case. Nevertheless, ultimately, whether a different balance should be struck under the acts given the nature of the injury and the current medical knowledge about asbestos exposure is a question more

appropriately addressed to the legislature. It is the province of the legislature to draw the appropriate balance. It is not our role to inject a compromise but, rather, to interpret the acts as written."); *Henrich v. Libertyville High Sch.*, 186 Ill. 2d 381, 395-95, 712 N.E. 2d 298 (Ill. 1998) ("It is the province of the legislature to enact laws; it is the province of the courts to construe them. Courts have no legislative powers; courts may not enact or amend statutes. A court cannot restrict or enlarge the meaning of an unambiguous statute. The responsibility for the justice or wisdom of legislation rests upon the legislature. A court must interpret and apply statutes in the manner in which they are written. A court must not rewrite statutes to make them consistent with the court's idea of orderliness and public policy.") (internal citations omitted); *Hayen v. County of Ogle*, 101 Ill. 2d 413, 421, 463 N.E. 2d 124 (Ill. 1984) ("we do not sit as a superlegislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare") (*quoting Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423 (1952)).

Indeed, the Illinois Supreme Court does not defer to the legislature when it encounters ambiguity in a statute. As the Court has held: "When the statutory language is clear and unambiguous, it must be applied as written, without resort to extrinsic aids of statutory construction." *Solon* at 440; *see also Cothron* at ¶ 32. Conversely, "if a statute is capable of being understood by reasonably well-informed persons in two or more different ways, the statute will be deemed ambiguous, . . . [and] the court may consider extrinsic aids of construction in order to discern the legislative intent." *Solon* at 40. If it admits of no reasonable interpretation, it is void for vagueness. *E.g., People v. Izzo*, 195 Ill. 2d 109, 113, 745 N.E. 2d 548 (Ill. 2001).

In *Cothron*, the Court found the language unambiguous, did not resort to extrinsic aids to clarify any ambiguity, and did not question whether the statute's prohibitions were sufficiently definite to meet constitutional due process standards. Instead, the Court found the language clear

and unambiguous, acknowledged the potential for harsh consequences, and invited the legislature to change the law if it saw fit to do so. *Schwartz* thus properly recognizes that even if the Amendment is "consistent with a reasonable interpretation of the prior enactment and its legislative history, it is also consistent with the legislature course-correcting the unintended results of the original statute." *Schwartz* at *8 (internal citation omitted) (quoting *McGinnis*, 238 Ill. 2d at 299). From this, *Schwartz* rightly concludes "that consistency by itself cannot overcome the state-law presumption that the statute has been changed rather than clarified." *Id.* (citing *McGinnis, supra*). ". . . *Cothron*'s 'make clear' phrasing does not cabin the legislature's action or by itself overcome the presumption that the law has been changed rather than clarified." *Schwartz* at *7 (citing *McGinnis*, *supra*). And it reasons that "[i]f the Illinois legislature had responded to *Cothron*'s invitation by repealing the Act altogether, that action could not be credibly characterized as a mere 'clarification.'" *Id*.

*Schwartz* further observes that its "conclusion that the amendment does not merely change the remedy is supported by principles of statutory construction." *Id*. at *13. "Under Illinois law, '[s]tatutes should be construed, if possible, so that no term is rendered superfluous or meaningless.'" *Id*. (quoting *Bonaguro v. Cnty. Officers Elec. Bd.*, 158 Ill. 2d 391, 397, 634 N.E.2d 712 (Ill. 1994)); *see also Solon* at 440-41 ("We construe the statute to avoid rendering any part of it meaningless or superfluous"). "It would be superfluous to read" the provision that "a private entity that, in more than one instance, collects . . . or otherwise obtains the same . . . biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 *has committed a single violation*, . . . [thereby] redefining a violation for purposes of the Act as merely a limitation on the plaintiff's recovery, where the amendment already expressly limits plaintiffs to 'one recovery.'" *Schwartz* at *13 (quoting 740 ILCS 14/20) *Id*.

12

(quoting 740 ILCS 14/20) (emphasis added by the Court).

Further, the legislature that enacted BIPA was no longer in existence to ask what it had meant when it enacted BIPA. BIPA was passed in 2008. *See* 740 ILCS 14/1 (citing P.A. 95-994, eff. Oct. 3, 2008). The Amendment was passed 16 years later in 2024. *See* 740 ILCS 14/20 (citing P.A. 103-769, eff. Aug. 2, 2024). From this impossibility arises the cardinal rule of statutory construction that a later legislature cannot clarify the legislative intent of a prior legislature: "[T]he legislative intent that controls the construction of a public act is the intent of the legislature which passed the subject act, and not the intent of the legislature which amends the act." *O'Casek v. Children's Home & Aid Soc'y*, 229 Ill. 2d 421, 441 (Ill. 2008).

Additionally, the canon of avoidance compels if there are two equally plausible readings of a statute, and one of them raises constitutional concerns, judges must choose the other one. *See Clark v. Suarez Martinez*, 543 U.S. 371, 380-81 (2005); *Thomas v. Khoury*, 2021 IL 126074, 190 N.E. 3d 245, ¶ 15 (Ill. 2021). This Court's construction of the Amendment to be a clarification pursuant to which "there is no need to determine whether the amendment should have retroactive effect because it is as if the amendment has been in place all along", *Gregg* at 5, affords the Illinois legislature with a power that it lacks. "The legislature is without constitutional authority to enact a law that is truly retroactive, in that it impairs vested rights even if that is its expressed intention." *First of Am Trust Co. v. Armstead*, 171 Ill. 2d 282, 290, 664 N.E. 2d 36 (Ill. 1996) (citing *City of Chicago v. Collin*, 302 Ill. 270, 274, 134 N.E. 751 (1922) ("While the general rule is that statutes are not to be given retrospective operation except where it is manifest that the legislature intended they should have such operation, it is not competent for the legislature to give such operation to an act where it will affect existing or vested rights.")). "Such vested rights are interests that are protected from legislative interference by our due process clause (Ill. Const. 1970, art. I, § 2)."

*Armstead* at 289. *Cothron's* answer to the certified question was "that the plain language of section 15(b) and 15(d) shows that *a claim accrues* under the Act *with every scan or transmission* of biometric identifiers or biometric information without prior informed consent." *Cothron* at ¶ 45 (emphasis added). The Court's choice of construction retroactively deprives Plaintiff for each subsequent "claim . . . for each violation" of BIPA, 740 ILCS 14/20, of both the claim and the potential recovery for such violations, inconsistent with the Illinois Due Process Clause.

This constitutional issue should be avoided for an additional reason. As *Schwartz* recognizes, ". . . Illinois courts no longer use" a "'vested rights' approach to determine temporality." *Schwartz* at *12 (citing *Perry*, 2018 IL 122349, at ¶ 64), but it "might still provide the basis for a state constitutional due-process change to a law. *Id.* at ¶ 64, n.1. The Illinois Supreme Court has in recent years avoided this constitutional problem entirely through its adoption of *Landgraf v. USI Film Products*, 511 U.S. 244 (1994) for deciding issues of retroactivity. *See Perry* at ¶ 64 ("To consider whether a right has vested necessarily involves an inquiry into retroactive impact, which would contravene this [the Illinois Supreme] court's repeated holding that we do not reach step two of *Landgraf*" when addressing retroactivity). As noted in Plaintiff's opposition to Defendant's motion to dismiss, ". . . Defendant does not even attempt to perform a *Landgraf* [] analysis or argue that the Amendment is procedural and not substantive." Dkt. # 49 at 8.

Defendant's end-running of the *Landgraf* analysis for retroactivity is what led the Court astray: ". . . Illinois courts have now expressly adopted the approach toward retroactivity set out in *Landgraf*[.]" *Schwartz* at *9 (citing *Perry* at ¶ 64). And *Landgraf* includes an "axiom that retroactivity is not favored in the law and [] interpretive corollary that that congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *Landraft* at 264. As the decision observes, "the presumption against retroactive legislation

is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than the Republic" based on "[e]lementary considerations of fairness . . . that gives people confidence about the legal consequences of their actions." *Id*. at 265-66. "It is therefore not surprising that the antiretroactivity principle finds expression in several provisions of our Constitution." *Id*. at 266.

Finally, *Schwartz* is supported by several recent decisions of the Illinois Circuit Court of Cook County which hold that the Amendment is not a clarification but is rather a substantive amendment that is not procedural or retroactive: (1) *Wallace v. Vee Pak, LLC d/b/a Voyant Beauty*, No. 24 L 4560 (Oct. 10, 2024), Exhibit B; (2) *Gagen v. Mandell Menkes, LLC*, No. 2023 L 008294 (Oct. 21, 2024), Exhibit C; (3) *Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Oct. 30, 2024), Exhibit D; and (4) *Boatman v. Riveredge Hosp., Inc.*, No. 2024 L 3329, (Nov. 7, 2024) Exhibit E.[3]

## IV. CONCLUSION

Plaintiff alleged in his Complaint in good faith that over $75,000 was in controversy. As demonstrated above, Plaintiff could "potentially" recover in excess of $75,000 on his claims when he filed his Complaint in this action, and that is all that is required to sustain jurisdiction in this Honorable United States District Court. *St. Paul*, 303 U.S. at 289; *Sykes*, 72 F.4th 206; *Schwartz* at *14. Wherefore, the Court should grant Plaintiff's Motion to Reconsider, Alter or Amend a Judgment Under Rule 59(e) and for Relief from a Judgment or Order Under Rule 60(b)(1) & (6) of the Federal Rules of Civil Procedure, set aside its order or judgment of dismissal, reinstate this action on its docket, and deny Defendant's Motion to Dismiss.

---

[3] Except for the first of these opinions, they all were decided after October 11, 2024 when Plaintiff filed Plaintiff's Response in Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). Dkt. # 49. The first was decided only the day before, October 10, 2024, and counsel for Plaintiff was unaware of its existence when filing the Response. Plaintiff's counsel was attempting to negotiate and file with Defendant's counsel a joint motion for leave to submit supplemental authorities when the Court issued its ruling.

Dated: December 5, 2024

*Respectfully submitted,*

/s/ David Bizar
David Bizar
Andres Pereira
DJC LAW, PLLC
1012 W Anderson Ln
Austin, Texas 78757
(512) 220-1800
dbizar@teamjustice.com

Samuel L. Eirinberg
DJC Law, PLLC
140 S. Dearborn Street, Ste. 1610
Chicago, Illinois 60603
(872) 804-3400
sam@teamjustice.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, I caused a true and correct copy of the foregoing PLAINTIFF'S MOTION TO RECONSIDER, ALTER OR AMEND A JUDGMENT UNDER RULE 59(e), AND FOR RELIEF FROM A JUDGMENT OR ORDER UNDER RULE 60(b) to be filed with the Court by electronic filing protocols, and that the same will be electronically served upon all attorneys and parties of record registered with the Court's ECF/CM system.

/s/ David Bizar
David Bizar