IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JOHN GREGG,** <br><br> Plaintiff, <br><br> vs. <br><br> **CENTRAL TRANSPORT, LLC**, <br><br> Defendant. | Case No.: 1:24-cv-01925 <br><br> Hon. Elaine E. Bucklo <br><br> Magistrate Judge Hon. Gabriel A. Fuentes |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION TO ALTER OR AMEND A JUDGMENT UNDER RULE 59(e) AND FOR RELIEF FROM A JUDGMENT OR ORDER UNDER RULE 60(b)**

Plaintiff, John Gregg ("Plaintiff"), by and through his undersigned counsel, respectfully files this Reply to Defendant's Response in Opposition to Plaintiff's Motion to Reconsider, Alter or Amend a Judgment Under Rule 59(e) and for Relief from a Judgment or Order Under Rule 60(b), Dkt. # 64 ("Opposition") and in further support of its Motion, Dkt. # 54, as supplemented, Dkt. # 56.

## Introduction

Plaintiff had not obtained transcripts of the House and Senate Debates on the Amendment by when it briefed this Motion. Defendant obtained and included the House, but not the Senate, debate transcript with its Opposition. *See id*. at Ex. A; also attached hereto as Exhibit A. We have now obtained a transcript of the Senate Debate, which we attach hereto as Exhibit B; an audio recording of the Senate Debate is attached hereto as Exhibit C.[1]

---

[1] Defendant's Opposition makes no reference to the Senate vote proceedings. No official transcript of the April 11, 2024 Senate debate of SB 2979 appears to have been made. Our firm obtained a copy of the official audio recording of the Senate debate on January 21, 2025, from Blank Rome, LLP, which represented a defendant business employer in *Hamilton v. Power Stop LLC*, No. 2023 L 008760 (Cir. Ct., Cook County, Law Div.), and filed it with that court on January 22, 2025 under Defendant Power Stop,

1

In *K. Miller Construction v. McGinnis*, 238 Ill. 2d 284, 938 N.E. 2d 471 (Ill. 2010), the Illinois Supreme Court explained that "[a] number of factors may indicate whether an amendment is merely a clarification rather than a substantive change in the law." 238 Ill. 2d 284, 299. After identifying the three factors that were previously discussed, the Court also noted that "time and circumstances surrounding the enactment of the amendment may indicate that the change wrought by the amendment was formal only—that the legislature intended merely to interpret the original act." *Id.* (quoting 1A N. Singer, *Sutherland on Statutory Construction* § 22.30, at 366, 374-75 (6th ed. 2002 rev.)).

The Illinois Supreme Court reaffirmed the importance of legislative floor debates in discerning the legislature's intent in *People v. McChriston*, 2014 IL 115310, ¶¶ 20-21 (citing *McGinnis*). In determining that an amendment constituted a change rather than a clarification, the Court relied upon floor debate statements in which Representative Cunningham described the amendment as making "changes to the Corrections Code." *Id.* ¶ 20. The Court concluded that because "Representative Cunningham expressly stated that the amendment would change the then-current law. . . . we presume that a change was intended to be made." *Id.* ¶ 21.

This principle applies here with equal force. During the Senate debate Senator Cunningham stated that "Senate Bill 2979 would *change* the law by *changing* the way liability accrues when violations of the Act occur." Exhibit B at 2 (emphasis added). Because "it is presumed that, in enacting new legislation, the legislature acts with full knowledge of previous judicial decisions addressing the subject matter of that legislation," *People v. Jones*, 214 Ill. 2d 187, 199, it follows that Senator Cunningham's statement on the senate floor—calling the

---

LLC's Notice of Supplemental Authority. We obtained the audio recording from Blank Rome and retained an independent professional court reporting service, Steno Agency, Inc., 315 W. 9th Street, Suite 807, Los Angeles, CA 90015, Telephone 888-707-8366, to prepare a certified transcription of it.

Amendment a "change" in the law—was intentional and legally significant.

Since the legislative history in the House became available, every court that has addressed the temporal reach of SB 2979 has held that the Amendment is a change in the law, and thus applies only prospectively. *See, e.g.*, *Giles v. Sabert Corp.*, No. 1:24-cv-02996, 2025 U.S. Dist. LEXIS 12888 (N.D. Ill. Jan. 21, 2025). The one court in the Circuit Court of Cook County, *Ballard v. Freedman Seating Co.*, No. 24 L 4606 (Cook Cnty. Oct. 2, 2024) (Schneider, J.), initially finding the Amendment retroactive has since reversed course. *See Paniagua v. Blommer Chocolate Co.*, No. 2024 L 004347 (Cook Cnty. Dec. 17, 2024) (Schneider, J.); *Marshall et al. v. Grand Avenue Manager VII LLC*, No. 2024 L 004745 (Cook Cnty. Jan. 13, 2025) (Schneider, J.), Exhibit D and Exhibit E. In light of the now-available legislative history, this Court should reevaluate the *McGinnis* factors and, consistent with Illinois Supreme Court precedent, find that the Amendment was intended to change the law rather than merely clarify it.

*McGinnis* **Factor 1**:

Plaintiff did not move for reconsideration on the ground that the first factor under *McGinnis*, "whether the enacting body declared that it was clarifying a prior enactment", was met. Defendant did not move for reconsideration and it is improper for it to do so within an Opposition. Both this Court and the *Schwartz* opinion on which the *Blocker* decision rested, concluded that the first factor was not met. *See* Motion at 3 (citing *Schwartz v. Supply Network, Inc.*, No. 1:23-cv-14319, 2024 U.S. Dist. LEXIS 213002, at *5 (N.D. Ill. Nov. 22, 2024); *Gregg* at *5).[2] The Court decided this factor correctly.

---

[2] This Court found in *Gregg* that "[t]he Illinois Supreme Court has identified circumstances that 'may indicate whether an amendment is merely a clarification rather than a substantive change in the law,' including 'whether the enacting body declared that it was clarifying a prior enactment, whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment of its legislative history.' **The latter two circumstances are present here**." (citing *McGinnis*, 938 N.E. 2d at 481) (emphasis added).

### *McGinnis* Factor 2:

Defendant argues that the second *McGinnis* factor, "whether a conflict or ambiguity existed prior to the amendment", is met, asserting that "[t]he Motion and *Schwartz* and *Blocker* suffer from a fundamental misunderstanding of what *Cothron v. White Castle Sys.*, 2023 IL 128004, 216 N.E. 3d 918 (Ill. 2023) did—and importantly, did *not*—hold." Opp. at 11 (emphasis in original). Defendant claims, without citation and with no support, that "[t]he *Cothron* Court did *not* hold, as Plaintiff suggests and the court in *Schwartz* and *Blocker* incorrectly concludes, that prevailing plaintiffs are entitled to seek recovery of statutory liquidated damages for each of those scans and transmissions." *Id*. at 12 (emphasis in original).[3] Defendant further asserts without citation or support that "[t]hat question was simply not before the Illinois Supreme Court in *Cothron*." *Id*.

Tellingly, Defendant's Opposition fails to mention the Seventh Circuit's *Cothron* decision that referred the certified question to the Illinois Supreme Court and was cited in Plaintiff's moving papers. *See* Mot. at 8 (citing *Cothron v. White Castle Sys.*, 20 F.4th 1156, 1165 (7th Cir. 2021)). There, the Seventh Circuit observed that "[t]he district judge rejected White Castle's 'one time only' theory of claim accrual and denied the motion [for judgment on the pleadings]. But he found the question close enough to warrant an interlocutory appeal," asking the Seventh Circuit "to certify the question to the Illinois Supreme Court." 20 F.4th at 1159. White castle had "argu[ed] that the suit is untimely . . . because her claims accrued in 2008 when her first fingerprint was scanned," but "Cothron countered that a new claim accrued each time she scanned her fingerprint and White Castle sent it to the third-party authenticator . . . ." *Id*.

In support of their arguments for and against, "both Cothron and White Castle maintain[ed] that the other's position would produce untenable consequences that the General Assembly could

---

[3] *Giles* also reached the conclusion that Defendant asserts is erroneous. *See id*. at *8, *12.

4

not possibly have intended." *Id*. at 1165. White Castle argued that "Cothron's interpretation could yield staggering damages awards in this case and others like it [i]f a new claim accrues which each scan" imposing "potentially crippling financial liability." *Id*. The Seventh Circuit found that Cothron's "better point is that White Castle's first-time-only reading would lead itself to an odd result. Once a private entity has violated the Act, it would have little incentive to course correct and comply if subsequent violations carry no legal consequences." *Id*. The Seventh Circuit concluded that, "[a]ll told, the practical implications of either side's interpretation, to the extent that Illinois courts would weigh them, d[id] not decisively tilt one way or the other." *Id*. Consequently, the Seventh Circuit concluded that "'the novelty and uncertainty of the claim-accrual question' warranted certification of the question to [the Illinois Supreme Court]." *Id*. And the Illinois Supreme Court "chose to answer that question." *Cothron* at ¶ 10.

In Illinois, "[c]ertified questions, by definition, are questions of law that [the Illinois Supreme C]ourt reviews *de novo*." *Moore v. Chicago Park Dist.*, 2012 IL 112788, 978 N.E. 2d 1050, ¶ 9 (Ill. 2012) (citing *Simmons v. Homates*, 236 Ill. 2d 459, 466, 925 N.E. 2d 1089 (Ill. 2010)). "Generally the scope of [the Illinois Supreme Court's] review is limited to the certified question." *Martin v. Goodrich Corp.*, 2025 IL 130509, ¶ 12 (Ill. 2025) (citing *Moore, supra*). *A fortiori*, the Court's scope of review of a certified question includes the competing concerns that resulted in the federal appellate or U.S Supreme Court certifying the issue. *E.g.*, *Simmons* at 457. The Seventh Circuit also recognized that the consideration of alternative theories for calculating damages is intrinsically intertwined with and cannot be detached from the analysis of the certified question of claim accrual. *Cothron v. White Castle Sys*., 20 F.4th 1156, 1165 ("Cothron responds that the calculation of damages is separate from the question of claim accrual. True, but she does not explain how alternative theories of calculating damages might be reconciled with the text of

5

section 20"). Accordingly, when the Illinois Supreme Court addressed in *Cothron* the Seventh Circuit's certified question—whether BIPA claims accrue for each alleged violation or only the first[4]—it necessarily considered these competing concerns regarding the consequences of its decision, and its resolution of those concerns formed and became a part of the Court's holding.

Defendant asks the Court to disregard the Illinois Supreme Court's holding in *Cothron* that liquidated damages are potentially available for each violation. But it is axiomatic that a federal court may not. "At the time Plaintiffs filed this case, the controlling law concerning the accumulation of damages under Sections 15(b) and 15(d) of BIPA was *Cothron v. White Castle Systems, Inc.*, 2023 IL 128004" *Giles* at *8; *see also Schwartz* at *7 ("*Gregg* does not change the Court's analysis; *see also Svboda v. Amazon.com, Inc.*, No. 1:21:cv-05336, at *36-37 (N.D. Ill. Mar. 30, 2024) (recognizing that "*Cothron* held that a separate BIPA action accrues 'with every scan' of biometric data . . . and rejected the argument that a different result was warranted because damages may exceed $17 billion reasoning 'this court has repeatedly held that, where the statutory language is clear, it must be given effect, even though the circumstances may be hard, unjust, absurd, or unwise" while also recognizing that "damages under the BIPA are discretionary") (internal quotation marks omitted). [W]hile ambiguity in a statute prior to an amendment can indicate clarification rather than change, *see McGinnis*, 238 Ill. 2d at 299 (citing *Middleton*, 578 F.3d [655, 663 (7th Cir. 2009)], the relevant inquiry concerns ambiguity in the statutory text itself, *see Middleton*, 578 F.3d at 664 ('As we explained in the first portion of our opinion . . . text of the two statutes was not ambiguous, leaving nothing for Congress to 'clarify.')." "And the Illinois Supreme Court found the statutory language here clear." *Id.* at *7-8 (citing *Cothron* at ¶¶ 30, 40)).

---

[4] The certified question was: "Do section 15(b) and 15(d) claims accrue each time a private entity scans a person's biometric identifier and each time a private entity transmits such a scan to a third party, respectively, or only upon the first scan and first transmission?" *Id*. at 1167.

6

As extensively discussed in Plaintiff's moving papers, in taking up the certification, the Illinois Supreme Court confirmed that the availability under BIPA of statutory liquidated damages on a "per-scan" basis was not ambiguous under Illinois law. *See* Mot. *passim*; *Schwartz* at *2; *Giles* at *11 ("This Court agrees with *Schwartz* and the reasoning contained therein, and so adopts its analysis here."). Indeed, Defendant's discussion of the second *McGinnis* factor notably omits any response to Plaintiff's moving papers' showing that the Illinois Supreme Court's ruling in *Cothron* that liquidated damages are potentially available for each BIPA violation follows directly from *Cothron*'s citations to its previous decisions in *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 129 N.E. 3d 1197 ¶¶ 36-37 (Ill. 2019) and *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, 193 N.E. 3d 1253 (Ill. 2022). *See* Mot. at 6-8.

In *Rosenbach*, the Illinois Supreme Court held that "[u]nder the [BIPA] Act, any person 'aggrieved' by a violation of its provisions 'shall have a right of action *** against an offending party' and 'may recover for each violation' the greater of liquidated damages or actual damages, reasonable attorneys fees and costs, and any other relief, including an injunction, that the court deems appropriate." *Id*. at ¶ 1 (alteration in original). The "central issue" before the Court was "whether one qualifies an 'aggrieved' person and may seek liquidated damages and injunctive relief pursuant to the Act if he or she has not alleged some actual injury or adverse effect, beyond violation of his or her rights under the statute." *Id*. In reaching the holding that no injury beyond statutory aggrievement is required for a plaintiff to recover liquidated damages—for each separate statutory violation—the Court rejected the characterization of "violations of the [BIPA] law, as merely 'technical' in nature." 2019 IL 123186, at ¶ 34. In doing so, the Court expressly held that the Illinois legislature had intended through its enactment of BIPA to provide an incentive and enforcement mechanism for businesses to comply with the Act's requirements and prohibitions in

7

two ways, the second of which was by "subjecting private entities who fail to follow the statute's requirements to *substantial potential liability, including liquidated damages, 'for each violation' of the law whether or not actual damages, beyond violation of the law's provisions, can be shown*." *Rosenbach* at ¶¶ 34-36; *see also* Mot. at 7-8 (emphasis and underlining added).

In *McDonald*, the Illinois Supreme Court next addressed, *inter alia*, the issue of whether the exclusivity provisions of the Workers' Compensation Act, 820 ILCS 305/1, *et seq.*, bars a claim for statutory damages under BIPA where an employer that is alleged to have violated BIPA. The Court acknowledged the Defendant's concerns that such a ruling could "expose employers to potentially devastating class actions that can result in financial ruin." *Id*. at ¶ 47. However, the Court was also "cognizant of the substantial consequences the legislature intended as a result of Privacy Act violations" under BIPA as well as "the difficulty in providing meaningful recourse once a person's biometric identifiers or biometric information has been compromised." *Id*. at ¶ 48 (citing *Rosenbach* at ¶ 45; 740 ILCS 14/5(c)). The Court concluded that "[t]he General Assembly has tried to head off such problems before they occur . . . by subjecting private entities who fail to follow the statute's requirements to *substantial potential liability* (740 ILCS 14/20 (West 2016)) whether or not actual damages beyond the violation of the law's provisions can be shown." *Id*. (emphasis added) (citing *Rosenbach* at ¶ 36). "It is clear," the Court's opinion continues, "that the legislature intended for this provision to have *substantial force*." *Id*. (emphasis added) (citing *Rosenbach* at ¶ 37). The Court had also observed in *McDonald* that "[u]ltimately, however, whether a different balance should be struck under [BIPA] given the category of injury is a question more appropriately addressed to the legislature" and that "[i]t is the province of the legislature to draw the appropriate balance." *McDonald* at ¶ 49. It further observed that "[i]t is not our role to inject a compromise, but, rather, to interpret the acts as written." *Id*.

8

Thus, even if the Seventh Circuit in its *Cothron* opinion considered BIPA to be ambiguous, once the Illinois Supreme Court decided the question on the referral, its decision that BIPA was not ambiguous became authoritative and binding on the Seventh Circuit and all other courts. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law"); *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1013 (7th Cir. 2020) (ruling that once a State Supreme Court decides an issue of state law, federal courts are required to follow the State Supreme Court rather than Seventh Circuit decisions to the contrary); *see also Schwartz* at \*6 ("the Court is neither able nor willing to revising the Illinois Supreme Court's conclusions regarding the clarity of the Act's original text") (citing *Montana v. Wyoming*, 563 U.S. 368, 377 n. 5 (2011)).

Moreover, if Defendant is correct that the Illinois Supreme Court has not previously held that liquidated damages are potentially available for each violation of BIPA, it would then become this Court's role to predict, not ignore as Defendant would have this Court do, how the Illinois Supreme Court has indicated it would, or otherwise probably would, resolve the question. *See Comm. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 811 (7th Cir. 2018) ("Under *Erie*, our role in deciding these questions of state law is to predict how the highest courts of the respective states would answer them.") (citation omitted). Defendant points to nothing to support its preferred outcome that the Illinois Supreme Court would probably decide that BIPA *never* allowed for the potential recovery of liquidated damages for each violation in an amount that does not result in the destruction of a business. Unsurprisingly, given the Illinois Supreme Court's repeated pronouncements to the contrary, there is no such authority. As *Cothron* confirmed, the Illinois Supreme Court has consistently stated in its opinions that under the pre-Amendment BIPA's plain language and the legislative intent that formed it, liquidated damages are potentially

9

available for each violation until and unless the legislature later decides that a different balance should be struck. *See Cothron* at ¶¶ 40-43; *Rosenbach* at ¶¶ 36-37; *McDonald* at ¶¶ 47-49.

Furthermore, the legislative history of the floor debates which immediately preceded the House and Senate votes represents a significant element of the *McGinnis* analysis.

Defendant falsely accuses that "*Blocker* selectively cites" to portions of the Illinois House debate transcript, "neglected to cite or consider statements" of other portions, and that "[u]ltimately the *Blocker* court reached unsupported conclusions based on a cherry-picked view of P.A. 103-0769's legislative history, drawn from selectively cited portions of the Illinois House of Representatives debate on SB 2979." Opp. at 8-9; *see* House Debate Transcript, Exhibit A; Senate Debate Transcript, Exhibit B. As will be demonstrated below, the transcripts the legislators who voted for the Amendment understood and intended that (a) under Cothron's "strict interpretation of the law as written," liability accrues on a per occurrence basis; (b) but the Amendment would "change" the statute from a per violation, per occurrence to one person, one violation; and (c) that the change would be prospective only, consistent with the Illinois Statute on Statutes, 5 ILCS 70/40—which Defendant does not even acknowledge.

In *People v. McChriston*, the Illinois Supreme Court determined that an amendment constituted a change rather than a clarification, relying upon an explicit statement from Representative Cunningham made during the floor debates, where he described the amendment as making "changes to the Corrections Code." 2014 IL 115310, ¶¶ 20–21 (citing *McGinnis*). The Court concluded that because "Representative Cunningham expressly stated that the amendment would change the then-current law. . . . we presume that a change was intended to be made." *Id.* ¶ 21. Here, both the House sponsor, Representative Williams, and the Senate sponsor, Senator Cunningham, provided identical answers in response to the same question posed by the opposition

10

concerning retroactivity. Specifically, when asked, "[D]oes this amendment to the Act apply retroactively to cases already decided or to pending cases?" both sponsors answered, "No. . . ." Exhibit A at 50; Exhibit B at 5. Senator Cunningham acknowledged that under the *Cothron* Court's "strict interpretation of the law as written," Exhibit A, "liability accrues on a per occurrence basis . . . that's sometimes referred to as a per [fingerprint] swipe basis . . . ." Exhibit B at 3. He explained that "Senate Bill 2979 would *change* that. Instead liability would accrue on a per person basis." *Id*. at 3 (emphasis added); *see also id.* at 2 ("Senate Bill 2979 amends . . . BIPA . . . by *changing* the way liability accrues when violations occur (emphasis added). Similarly, Representative Williams described the Amendment "as changing the assessment of damages from a per violation, per occurrence to one person, one violation. So, this Bill addresses a liability issue, as outlined in White Castle." Exhibit A at 44-45. Representative Williams further described what the Amendment does: And that's what we've done here, is really to scale back the damages, again, to per person per violation. . . ." *Id*. at 46. When asked if omitting a statement of retroactive intent was an oversight, Representative Williams responded that it was not: "We are not including a retroactivity provision." *Id*.

The General Assembly did not choose to omit a retroactivity provision just so the courts could be bogged down with endless motion practice trying to decipher their intent. Instead, as recognized by the Illinois Supreme Court seven years ago, "the legislature is undoubtedly aware of how to clearly indicate its intent that a statute apply to causes of action currently pending in the courts." *Perry v. Dep't of Prof'l Reg.*, 2018 IL 122349, ¶ 66. Furthermore, Senator Cunningham is undoubtedly aware of the legal significance of his statement that the Amendment represents a "change" in the law, after being quoted by the Illinois Supreme Court in *McChriston* for that exact proposition 9 years earlier. Thus, by describing the Amendment as a "change" in the law and

choosing not to include a retroactivity provision in the Amendment, the General Assembly voiced its clear institutional understanding, as confirmed during both the House and Senate Debates, that the Amendment would not apply to pending and completed cases.

The acceptance of the invitation to clarify was, as Judge Alexakis and Judge Ellis concluded, that the legislature enacted a prospective "change" aimed at "course-correcting the unintended results of the original statute." *Schwartz* at *8; *Giles* at *11. In other words, the invitation issued by the Illinois Supreme Court to clarify BIPA was accepted by the Illinois legislature through the legislature's vote to change it prospectively.

*McGinnis* **Factor 3**:

Defendant ignores Plaintiff's extensive briefing on the third *McGinnis* factor, "whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history," *see* Mot. at 9-15, and cites to only this Court's decision in this case. *See* Opp. at 13-14 (citing *Gregg* at *6-7). Defendant's argument that "as *Cothron* recognized, there is nothing in BIPA that suggests the legislature to authorize the recovery of damages that would result in the destruction of a business", Mot. at 14, misses the point. A $75,000 judgment would rarely—if ever—destroy a business, and *Cothron* affords all defendants in BIPA cases, including those who might be destroyed by a large award, to argue that "damages under the Act are discretionary rather than mandatory[.]" *Id*. at ¶ 42. The point is that because the award of liquidated damages may potentially exceed $75,000, more than $75,000 is in controversy under *Sykes*.

Moreover, Defendant's interpretation is not reasonable. BIPA's pre-Amendment language was that "[a]ny person aggrieved by a violation of this Act . . . may recover *for each violation*: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; [and] (2) against a private entity that intentionally

12

or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater." BIPA, 2007 Ill. SB 2400, eff. Oct. 3, 20-8 (emphasis added). The Illinois Supreme Court has consistently ruled that this language is unambiguous and liquidated damages may be cumulatively awarded "for each violation". *Cothron* rejected White Castle's argument that it would be absurd for it to face "annihilative liability' not contemplated by the legislature and possibly [] unconstitutional", holding in part, as *Svoboda* recognized: "We have found, however, that the statutory language support's plaintiff's position. As the district court observed, this court has repeatedly held that, where statutory language is clear, it must be given effect, 'even though the consequences may be harsh, unjust, absurd, or unwise.'" *Id*. at ¶ 40 (quoting *Petersen v. Wallach*, 198 Ill. 2d 439, 447, 746 N.E.2d 19 (2002)).

Controlling Illinois authorities further hold that once the Illinois Supreme Court made final judicial interpretations of legislative intent in *Rosenbach*, *McDonald*, and *Cothron*, the legislature lacked the power to legislatively abrogate its interpretations. *See People v. Rink*, 97 Ill. 2d 533, 541, 455 N.E. 2d 64 (Ill. 1983) ("Of course, the legislature, after a final judicial interpretation of legislative intent, cannot effect a change in that construction by a later declaration of what it did intend[.]"); *see also Rivers v. Roadway Express*, 511 U.S. 298, 306-07 (1994) (amendment that "reflects congressional disapproval" of "incorrectly decided" judicial interpretation is not clarifying); *In re Marriage of Cohn*, 93 Ill. 2d 190, 204, 443 N.E.2d 541, 548 (Ill. 1982) ("the legislature invaded the province of the judiciary by retroactively overruling a decision of a reviewing court. This constitutes a violation of article II, section 1, of the Illinois Constitution, which embodies the principle of separation of powers."); *Ill. Bell Tel. Co. v. Fair Emp't Practices Com.*, 81 Ill. 2d 136, 142, 407 N.E.2d 539, 541 (Ill. 1980) ("a legislative body cannot retroactively effectuate a change in statutory language by issuing a declaration of prior intent.").

**Conclusion**

In conclusion, the amount-in-controversy requirement is satisfied in this case because it does not appear to a legal certainty that Plaintiff cannot recover more than $75,000 on his Complaint. *See* Mot. at 8 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "The Court assesses the amount in controversy as of the date Plaintiff[] filed the case in federal court[.]" *Giles* at *7-8 (citing *Sykes v. Cook, Inc.*, 72 F. 4th 195, 205 (7th Cir. 2023); *see also* Mot. at 8 (citing *Schwartz* at *14 (citing *Sykes*)). And because "on the date of filing, the plaintiff could allege in good faith that over $75,000 was at stake, then the amount-in-controversy requirement is satisfied." *Giles* at *8 (quoting *Sykes* at 206 (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 809 (7th Cir. 2017) (cleaned up));[5] *see also* Mot. at 8. "At the time Plaintiff[] filed this case, the controlling law concerning the accumulation of damages under Sections 15(b) and 15(d) of BIPA was *Cothron v. White Castle Systems, Inc.*, 2023 IL 128004, 466 Ill. Dec. 85, 216 N.E.3d 918." *Giles* at *8. *Rosenthal* and *McDonald* also were and still are good and controlling authorities.

Neither the text of the Amendment nor the legislative history support a finding that the *McGinnis* factors were met to overcome the presumption that the Amendment was a change to BIPA rather than a clarification. This Court now has before it Transcripts of the House and the Senate Debates which together with the Amendment's failure to contain any language of clarification or retroactivity unequivocally establishes that Amendment changed BIPA's assessment of damages from a per violation, per occurrence to a one person, one violation, only

---

[5] Under *Sykes*, whenever subject-matter jurisdiction is absent due to lack of diversity jurisdiction and there is no other jurisdictional basis such as a federal question or Class Action Fairness Act ("CAFA") jurisdiction for lawsuits, the end result is that no matter their stage, "the district court never had jurisdiction over their [the plaintiffs'] cases" and all of the proceedings and orders already occurring in them except on subject-matter jurisdiction are void. *Id*. at 202.

14

for BIPA claims that post-dated the Amendment. For pre-Amendment BIPA claims like Plaintiff's, statutory liquidated damages for each BIPA violation always were and remain potentially available. They exceed $75,000 and are in controversy in this case. Diversity subject-matter jurisdiction is therefore present under *Sykes*.

With the passage of time, this Court now also has the benefit of the decisions of two other United States District Judges and several different Cook County Illinois Judges who have held that the Amendment is not a clarification but is rather a substantive amendment that is not procedural or retroactive. *See* Mot. at 15; *see also Paniagua v. Blommer Chocolate Co.*, Case No. 2024 L 004347 (Dec. 17, 2024), attached hereto as Exhibit D. The Court also now has the benefit of the House and Senate Debate transcripts, which reveal that the invitation issued by the Illinois Supreme Court to clarify BIPA was accepted by the Illinois legislature through the legislature's vote to change it prospectively.

With a more complete record factually and legally than was available to it at the time of the parties' original briefing, this Court on reconsideration should join with and adopt these opinions, set aside its order of judgment or dismissal, reinstate this action on its docket, and deny Defendant's Motion to Dismiss—affording Plaintiff his day in this Honorable Court.

Dated: January 30, 2025

*Respectfully submitted,*

/s/ David Bizar
David Bizar
Andres Pereira
DJC Law, PLLC
1012 W Anderson Ln
Austin, Texas 78757
(512) 220-1800
dbizar@teamjustice.com

15

        Samuel L. Eirinberg
        DJC Law, PLLC
        140 S. Dearborn Street, Ste. 1610
        Chicago, Illinois 60603
        (872) 804-3400
        sam@teamjustice.com

        *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on January 30, 2025, I caused a true and correct copy of the foregoing to be filed with the Court by electronic filing protocols, and that the same will be electronically served upon all attorneys and parties of record registered with the Court's ECF/CM system.

        */s/ David Bizar*
        David Bizar