**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JOHN GREGG,** | |
| Plaintiff, | Case No.: 1:24-cv-01925 |
| vs. | Hon. Elaine E. Bucklo |
| **CENTRAL TRANSPORT, LLC**, | Magistrate Judge Hon. Gabriel A. Fuentes |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR RECONSIDERATION OR RELIEF FROM JUDGMENT**

Plaintiff, Alvaro Amigon ("Plaintiff"), by and through his undersigned counsel, respectfully files this Opposition to Defendant's Motion to Strike Plaintiff's Reply in Support of his Motion for Reconsideration or Relief From Judgment ("Motion", Dkt. # 68).

The Court should not strike Plaintiff's Reply to Defendant's Response in Opposition to Motion to Alter or Amend a Judgment Under Rule 59(e) and for Relief From a Judgment or Order Under Rule 60(b) ("Reply", Dkt. # 65). Defendant's Motion should be denied because it fails to comply with the Court's Motion Practice Standing Order and was filed prejudicially late. If the Court proceeds to address the merits of the Motion the Court it should still be denied because the matters it contests are raised appropriately.

Because there is no reasonable dispute that the audio recording of the Senate debate is inauthentic and no challenge to the accuracy of the transcript has been made, the Court may take judicial notice of the Senate debate. Moreover, both the House Sponsor and the Senate Sponsor provided word-for-word identical answers when questioned about the Bill's retroactive application before passing the same worded Bill for it to become law. Therefore, whether the Court cites in its decision to just the House debate or to both the House and Senate debate, the Court should reach

1

the same conclusions. There are no good grounds to strike the two supplemental state court opinions that Plaintiff cited and included as exhibits in its Reply, let alone grounds to strike the Reply in its entirety. Finally, the Court should deny Defendant's request in the alternative for leave to file a sur-reply brief. The request comes prejudicially late and given the extensive briefing already provided by both sides the Court should presently have all the briefing that it needs to decide Plaintiff's Motion for Reconsideration.

I.     **Defendant's Motion Should be Denied Because it Fails to Comply with the Court's Motion Practice Standing Order and is Filed Prejudicially Late**

The Court's Motion Practice Standing Order requires, *inter alia*, that: "Moving counsel shall attempt to learn whether there is an objection and shall note whether the motion is unopposed." Defendant failed to comply with the Order. Defendant's failure to comply is material in this instance. Plaintiff's Reply was filed on January 30, 2025. Defendant waited more than three weeks to file its Motion and further filed a Notice of Motion for presentment of the Motion on February 27—just one day before the Court's scheduled ruling date under its MINUTE Order establishing the briefing schedule. *See* Dkt. # 68 (Motion); 69 (Notice of Motion); 63 (MINUTE Order).

Defendant's Motion is nine pages long and was not likely written in a day. Had Defendant timely approached Plaintiff's counsel of its intention to file its Motion, Plaintiff would have consented to Defendant's alternative request for leave to file a *timely* sur-reply brief. Had Defendant accepted it could have raised the arguments it is making in its Motion and the arguments it is refraining from making in a timely filed sur-reply, instead of seeking leave to do so in the alternative. This would have avoided any unnecessary delay, strain on judicial resources and undue prejudice to Plaintiff. But by waiting silently until the eve of the Court's scheduled ruling date and the Court's Motion Practice Standing Order, Defendant appears to be seeking a further delay of

2

the Court's adjudication of Plaintiff's Motion to Reconsider, Alter or Amend a Judgment Under Rule 59(e) and for Relief from a Judgment or Order Under Rule 60(b) ("Motion for Reconsideration") by fiat. This has been over Plaintiff's objection. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Extension, Dkt. # 62.

Under this Court's Motion Practice Standing Order, Defendant was required to have sought out the Plaintiff's position on the Motion. Instead, it filed an eleventh hour motion in disregard of the Standing Order and the Court's precious resources, and caused unnecessary prejudice to Plaintiff.

## II. The Court Should Not Strike Plaintiff's Reply Because the Matters it Raises are Raised Appropriately

Defendant is incorrect that "[i]t is well-established that a movant may not raise new arguments for the first time in a reply." Motion at 4 (citing *United States v. Kennedy*, 726 F.3d 968, 974 n.3 (7th Cir. 201) (citing *Broaddus v. Shields*, 665 F.3d 846, 854 (7th Cir. 2013)). *Kennedy* and *Shields* are inapposite as they address the Federal Rules of Appellate Procedure governing the filing of appellate reply briefs, not to reply briefs filed in District Courts under different rules, the Federal Rules of Civil Procedure. District Courts can and do frequently exercise their discretion to consider new arguments that are appropriately raised in a reply brief such as those regarding new authorities, which District Courts also possess discretion over whether to permit the opposing party to file a sur-reply. *E.g.*, *Polycon, Inc. v. R&B Plastics MacH., LLC*, No. 2:19-cv-00485, 2025 U.S. Dist. LEXIS 23299, at *4 (N.D. Ind. Feb. 10, 2025). Defendant's request in the alternative for leave to file a sur-reply tacitly acknowledges this.

Indeed, Defendant next cites *Horvath v. Apria Healthcare, LLC*, to argue that "the district court struck a reply brief that raised a new argument in support of a motion to compel arbitration and attached new affidavits in support of that argument" on the discretionary grounds that "by

waiting to until its reply to submit new evidence and new arguments based on that evidence [the movant] denied plaintiff a fair chance to respond." Motion at 4 (quoting *Horvath, supra*, No. 1:19-cv-04894, 2019 U.S. Dist. LEXIS 192327, at *3-4 (N.D. Ill. Nov. 5, 2019)). Defendant further quotes the *Horvath* decision as concluding that "[a] lawyer who plays dirty by sneaking in new evidence disserves his clients and tarnishes his credibility." *Id*. at 5 (quoting *Horvath* at *3-4). But it is Defendant's lawyers who are tarnishing their credibility by citing inapposite case authority just to insert a misleading cherry-picked quotation.

*Horvath* concerned an entirely different situation in which a defendant filed a motion to compel arbitration and then added two new affidavits to its reply brief, alleging new facts that were already available to the movant when it filed its moving papers. The Court quoted Federal Rule of Civil Procedure 6(c)(2) that "[a]ny affidavit supporting a motion must be served with the motion." *Id*. at *3. Here, Defendant has no basis to claim that Plaintiff's counsel played dirty by sneaking in a new affidavit of facts that it already had.

Defendant acknowledges that even today no official transcript of the Senate hearing on the Amendment is available on the Senate's website, Motion at 4, and does not contest the statement in our Reply that "[o]ur firm obtained a copy of the official audio recording of the Senate debate on January 21, 2025, from Blank Rome, LLP, which represented a defendant business employer in *Hamilton v. Power Stop LLC*, No. 2023 L 008760 (Cir. Ct., Cook County, Law Div.), and filed it with that court on January 22, 2025." Reply at 1, fn. 1. It is therefore undisputed that Plaintiff's counsel did not possess the audio transcript when counsel prepared and filed Plaintiff's Motion to Reconsider on December 5, 2024.

Additionally, no affidavits were filed. Plaintiff's intent was that the Court take judicial notice of the audio recording of a publicly held government proceeding that was transcribed by a

4

certified court reporter and service, rather than accept it as evidence. *See Tobey v. Chibucos*, 890 F.3d 634, 647-48 (7th Cir. May 15, 2018) (concluding that "a court may generally take judicial notice of public records under Federal Rule of Evidence 201 [of] a fact that is not subject to reasonable dispute"). There is no prohibition against a court taking judicial notice of a matter raised in a reply brief.

> ### III. The Court may take judicial notice of the transcribed audio recording of the Senate Debate Because There is No Reasonable Dispute That The Audio Recording is Inauthentic or Incorrectly Transcribed.

Defendant alleges that Plaintiff "obtain[ed] [the] audio recording of the debate through murky backchannels" while acknowledging that the audio recording was filed in a state court proceeding by the BIPA defendant business in *Hamilton*. Motion at 5,8. The *Hamilton* defendant filed it under a notice of supplemental authority, a copy of which is attached hereto as <u>Exhibit A</u>. Therein, the defendant's counsel asserted that, "[e]arlier this week" (the filing was made on Friday, January 17, 2025), "the undersigned counsel," who is Daniel R. Saeedi of Blank Rome LLP, "obtained *the* audio recording of when the Illinois Senate passed the BIPA Amendment at the Thid Reading of the Bill on April 11, 2024." Ex. A at ¶ 14 (emphasis added). The representation made to the Court by the defendant's counsel had to refer to counsel's obtaining the official government recording because otherwise counsel would have been obligated to disclose to the Court that counsel had obtained "*an* audio recording." "The audio recording" must mean the government's. Plaintiff's counsel learned of the filing because Plaintiff's counsel also represents the plaintiff, Tanya Hamilton, in that BIPA case. There were no "murky backchannels" here.

In any event, regardless of its source and sourcing Defendant does not dispute that the audio recording is a genuine recording of the Illinois Senate debate or that the transcription of it is accurate. Defendant argues that the Court should not accept it because there is a disclaimer on the Senate's website that for the Illinois Senate's live audio and video fees that "[a]ny use of this

broadcast without the proper written consent of the Illinois General Assembly is prohibited." Motion at 8 (citing https://ilga/senateaudvid.asp). But if parties were prohibited from filing documents and recordings in court proceeds due to this kind of notice restriction—which is simply a copyright warning—there would be no court filings of substance. The "fair use" doctrine allows for audio recordings and documents that are subject to these kinds of restrictions to be lawfully filed in court proceedings for litigation purposes as a matter of public necessity. *See Google LLC v. Oracle Am., Inc.*, 539 U.S. 1, 18 (2021).

There being no reasonable dispute as to the audio recording's authenticity or challenge to the transcript's accuracy, the Court should take judicial notice of them.

**IV.    The Illinois Senate Reached the Same Conclusions as the House in Passing the Same Worded Bill for it to Become Law.**

Defendant accepts the House debate transcript as genuine and susceptible to judicial notice. Motion at 5, fn. 1. Defendant concedes that "[i]n his Motion for Reconsideration, Plaintiff asked this Court to consider a transcript from the Illinois House of Representatives with respect to P.A. 103-0769 that had become available since [after] the Court dismissed his case." Motion at 5 (citing Dkt. # 56, ¶¶ 6-8). And noted that "[i]n its Response, Defendant addressed Plaintiff's argument about P.A. 103-0769's legislative history from the Illinois House of Representatives . . . ." Motion at 6. So both parties agree that the House transcript is properly before the Court. The Illinois Senate debate is perfectly consistent with the debate that occurred in the Illinois House. Below is a comparison chart of the pertinent parts of the House and Senate debates that Plaintiff has raised to this Court:

| House Debate | Senate Debate |
|---|---|
| "Williams, A.: . . . This Bill is simply a response to the court's invitation to address liability, clarify the intent that we have | "SENATOR CUNNINGHAM: Senate Bill 2979 amends the Biometric Information Privacy act, otherwise known as BIPA, and it does so by changing the way liability accrues |

| | |
|---|---|
| regarding damages for each violation. This Bill does that by providing . . . changing the assessment of damages from a per violation, per occurrence to one person, one violation." House Tr. at 44-45. | when violations of the Act occur. Under current interpretation of the law, liability accrues on a per occurrence basis or sometimes that's referred to as a per swipe basis, particularly in the context of fingerprints. Senate Bill 2979 would change that. Instead, liability would accrue on a per person basis. As I just alluded to, there's a little bit of a debate about that interpretation." Senate Tr. at 2. |
| "Keicher: Okay. And so, to clarify, there is no retroactivity? That… That is something that you're deeming inappropriate at this time? Williams, A.: We are not including a retroactivity provision. However, I think we'll be working on some legislative intent that may be helpful in… in terms of that issue." * * * * And does this Amendment to the Act apply retroactively to cases already decided or to pending cases? Willams, A. No, but a court or reviewing court could take judicial notice of our Amendment to the Act in determining an initial award or in reducing an award." House Tr. at 46, 49-50. | "Senator, does this amendment to the Act apply retroactively to cases already decided or to pending cases? . . . . SENATOR CUNNINGHAM: No, but a court or reviewing court could take judicial notice of our amendment to the Act in determining an initial award or in reducing an award." Senate Tr. at 5. |
| "Didech: I… I have just a few questions for legislative intent. Representative, in the *Cothron v. White Castle* decision, the Illinois Supreme Court invited the General Assembly to make clear our intent regarding the assessment of damages under the Biometric Information Privacy Act. Does this Amendment to the Act clarify our intention that the availability of discretionary liquidated damages serves to deter future violations without destroying a defendant's business? Williams, A.: Yes." House Tr. at 49-50. | "Senator Cunningham, in your opening remarks you mentioned that in the White Castle decision, the Illinois Supreme Court invited the General Assembly to make clear our intent regarding the assessment of damages under the Biometric Information Privacy Act. Does this amendment to the act clarify our intention that the availability of discretionary liquidated damages serves to deter future violations without destroying a defendant's business . . . . SENATOR CUNNINGHAM: Yes. . . . Senator, does this Amendment to the Act suggest any legislative intent to authorize a |

|  | damages award that would result in the financial destruction of a business? . . . . |
|  | SENATOR CUNNINGHAM: No." |
|  | Senate Tr. at 4-5. |

Thus, if the Court struck the Senate debate it would make no difference. Whether the Court cites in its decision to just the House debate or to both the House and Senate debate, the Court should reach the same conclusions—because the Illinois House and Senate reached the same conclusions during their debates when they passed the same worded Bill for it to become law.

**V.      There are No Good Grounds to Strike *Paniagua or Marshall*.**

Defendant also attacks Plaintiff's citation to and attachment of two Illinois State Court cases, *Paniagua v. Blommer Chocolate Co.*, No. 2024 L 004347 (Cook Cnty. Dec. 17, 2024) (Schneider, J.), and *Marshall et al. v. Grand Avenue Manager VII LLC*, No. 2024 L 004745 (Cook Cnty. Jan. 13, 2025) (Schneider, J.), on the grounds that "neither of [them] were included in Plaintiff's Motion to Reconsider . . . ." Motion at 6. But Plaintiff filed its Motion to Reconsider on December 5, 2024, Dkt. # 48, before both of these authorities were decided. So what Defendant proclaims is egregious sanctionable misconduct was just the routine citation in a reply of new pertinent authorities that were decided after the moving papers were filed. Moreover, these authorities were not cited for any new grounds. They were cited as additional, supplemental authorities to show that an Illinois State Court judge who had initially decided in *Marshall* that such court's jurisdictional limits were not met, but without making a reasoned decision, later reversed itself in its reasoned decision in *Paniagua* holding "[t]he August 2 Amendment should be applied prospectively only." *Paniagua* at 5 (*see* Reply at Ex. D). This was not a new argument. Judge Schneider reversed her position to come around in *Paniagua* to reach the same holding as each of the opinions that Plaintiff cited at page 15 of Plaintiff's Motion to Reconsider and attached

to it as Exhibit B (*Wallace v. Vee Pake, LLC d/b/a Voyant Beauty*, No. 24 L 4560 (Oct. 10, 2024) (Hon. Patrick J. Sherlock), Exhibit C (*Gagen v. Mandell Menkes, LLC*, No. 2023 L 008294) (Hon. Daniel J. Kubasiak), Exhibit D (*Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Oct. 30, 2024) (Hon. Mary Colleen Roberts), and Exhibit E (*Boatman v. Riveredge Hosp., Inc.*, 2024 L 3329 (Nov. 7, 2024) (Hon. Jerry A. Esrig). There is nothing improper with counsel citing in a reply brief newly decided case opinions that provide additional support for arguments made in the moving papers.

Defendant's Motion also challenges that "moreover, the two new decisions issued by Illinois Circuit Judge Schneider and attached to Plaintiff's misapply the applicable legal framework and ignore controlling precedents" demonstrating that Defendant not only could but did make sur-reply arguments at the time it filed its Motion. Motion 7. And to further refute this point, Plaintiff attaches to its Opposition what it believes is the first Cook County Chancery Division Circuit Cout Judge, the Honorable Caroline K. Moreland, *Ayesha Hawkins v. Lenny Gas N Wash Sauk Trail, LLC*, Case No. 2024 CH 00697, attached hereto as Exhibit B. Therein, in a well-reasoned seven-page opinion the Court "finds the reasoning in *Schwartz v. Supply Network* persuasive, alongside the Circuit Court's decision in *Wallace v. Ve Pak* [that t]he Amendment 'changed the law from: (a) each dissemination of a biometric scan is [a] violation, to (b) each and every dissemination of a biometric scan is a single violation.'" *Id*. at 7. "By redefining what constitutes a violation under Section 15(b) and 15(d) of the Act, the Amendment is defining a right and limiting liability, making it substantive in nature. Given this substantive change in the law, the Court finds it cannot be retroactively applied." *Id*. (second alteration in original).

Defendant cannot through filing a motion to strike escape from the tidal wave of authorities that have continued to reach a different result than this Court's decision.

### VI.     The Court Should Not Strike Plaintiff's Reply in its Entirety.

No good cause has been shown for the Court to strike the Reply or its exhibits in whole or in part. If, however, the Court decides otherwise the Court should only strike the parts that the Court has determined are subject to striking. Defendant argues that "because it is not possible to segregate the portions of the Reply that are premised on the four new cases or exhibits raised for the first time in his reply, the Court should strike Plaintiff's Reply in its entirety." Motion at 7 (citing *Horvath* at *4). But in the *Horvath* opinion that Defendant cites, the court expressly struck the movant's entire reply brief "[a]s a sanction" based on the Court's findings that the lawyer had engaged in deliberate misconduct. 2019 U.S. Dist. LEXIS 1292327, at *4. There was no misconduct here.

 Contrary to Defendant's above representation and another in its Motion that "rather than addressing head on Defendant's argument regarding the Illinois Supreme Court's holding in *Cothron* or attempting to distinguish case law cited in the Response", Motion at 6, nearly the entirety of the Reply is addressed solely to refuting the arguments of Defendant's Opposition and the case law that it cites. The vast majority of the Reply, indeed *none* of the Reply's analysis appearing on pages 3-13 of the 15-page Reply—where the *McGinnis* factors are discussed in rebuttal—make *no* reference to and contain *no* discussion about the Senate debate or the *Paniagua* or *Marshall* opinions.

### VII.     The Court Should Deny Defendant Leave to File a Sur-Reply Brief in the Alternative.

As noted above, if Defendant had timely approached Plaintiff, Plaintiff would have consented to Defendant's request for leave to file a sur-reply brief in the alternative. And regardless of whether Plaintiff would have consented, nothing prevented Defendant from filing a motion for leave to file a sur-reply well in advance of the Court's scheduled decision date. But having instead

attempted to obtain a further extended delay by fiat, Plaintiff opposes Defendant's request in the alternative for leave to file a sur-reply brief as coming prejudicially late. Defendant had the chance to file an appropriate brief that included a sur-reply and chose not to follow the Court's Motion Practice Standing Order and avail itself of the opportunity. It should not be rewarded for doing so.[1] Moreover, given the massive amount of briefing that is presently before the Court, the Court should already have all of the briefing that it needs to decide the Motion for Reconsideration.

Dated: February 24, 2025

> *Respectfully submitted,*
>
> /s/ David Bizar
> David Bizar
> Andres Pereira
> DJC LAW, PLLC
> 1012 W Anderson Ln
> Austin, Texas 78757
> (512) 220-1800
> dbizar@teamjustice.com
>
> Samuel L. Eirinberg
> DJC Law, PLLC
> 140 S. Dearborn Street, Ste. 1610
> Chicago, Illinois 60603
> (872) 804-3400
> sam@teamjustice.com
>
> *Counsel for Plaintiffs*

---

[1] Plaintiff's Memorandum in Opposition to Defendant's Motion for Extension raised that "[w]e care a lot about getting the decisions as soon as Judge Bucklo will issue them, both for our clients in these cases because they are having a negative impact on so many of our cases as you know. Indeed, your firm has been using Judge Bucklo's rulings offensively against other of our cases." Dkt. # 56 at 1.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 24, 2025, I caused a true and correct copy of the foregoing to be filed with the Court by electronic filing protocols, and that the same will be electronically served upon all attorneys and parties of record registered with the Court's ECF/CM system.

*/s/ David Bizar*
David Bizar